(125 App. Div. 592.)

## PEOPLE v. RINGE.

(Supreme Court, Appellate Division, Second Department. April 24, 1908.)

1. WORDS AND PHRASES—"UNDERTAKER."

An "undertaker" is one who takes the charge and management of funerals.

2. SAME—"FUNERAL."

A "funeral" is merely the disposition of the bodies of human beings after death, with the accompanying rites and ceremonies.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, p. 3007.]

3. CONSTITUTIONAL LAW—"POLICE POWER."

The exercise by the state of its police power must have relation to the promotion of the health, comfort, safety, and welfare of society, and, when a regulation does not fairly relate to some one of such objects, it is not within the police power, and common business, callings, and trades which are innocent in themselves, and have been followed in all communities from time immemorial, must be free, to all alike, on the same terms.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5424, 5438; vol. 8, p. 7756.]

4. HEALTH—REGULATION OF UNDERTAKERS—VALIDITY.

Laws 1905, p. 1267, c. 572, prohibiting a person not in the business of undertaking from engaging therein until he has been licensed as an embalmer, after having been employed as an assistant to a licensed undertaker for three years, etc., is not within the exercise of the police power of the state, and is invalid as an arbitrary denial of the right of one to make a contract for the burial of the dead.

Appeal from Court of Special Sessions of City of New York.

W. A. Ringe was convicted of violating Laws 1905, p. 1267, c. 572, regulating the business of undertaking, and he appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Leopold Leo (Robert P. Orr, on the brief), for appellant.
Peter P. Smith (John F. Clarke, Dist. Atty., on the brief), for the People.

WOODWARD, J. The statute under which the defendant has been convicted provides, in so far as it relates to the case in hand, that:

"From and after the passage of this act, a person not already engaged in the business of undertaking shall not engage in such business unless he shall have been duly licensed as an embalmer and shall have been employed as an assistant to a licensed undertaker continuously for a period of at least three years."

The immediate effect of this act, if it is good law, is to close the doors to all persons desiring to enter into the business of undertaking for a period of at least three years, for there could be no such thing

as a licensed undertaker until after the passage of this act, which provides for such licensing. It gives an absolute monopoly to the persons engaged in the business at the time of the passage of the act for a period of three years, though in that time one-half, or even all, of the licensed undertakers might die, or go out of business, or remove from the state. Not content with the prohibition for a period of three years as against the individual, the statute further provided that, if "a firm or corporation shall desire to engage in the business or practice of undertaking, each member of the firm or the manager of each place of business conducted by the corporation shall be a licensed undertaker." Thus the individual citizen of this state was not only inhibited the right to engage in a business which has existed ever since man reached the dawn of civilization, but he could not even engage his capital in an enterprise with others, either as a firm or a corporation, except that the corporation might employ one of the existing undertakers to manage its business; thus evincing the purpose of the Legislature, if purpose may be ascribed to the Legislature in this class of enactments, to confine the business of burying the dead to the undertakers who were in business at the time of the passage of the act, and such as should fall within their dominion in the after years, for the licensed undertakers could exclude from employment as assistants any and all persons who might desire to become undertakers. The provision of the statute is that they must have served with "a licensed undertaker continuously for three years"; and this would give such a class control over an innocent business that it would serve to build up a class, rather than promote any possible public interest. It was held in Schnaier v. Navarre Hotel & Importation Co., 182 N. Y. 83, 74 N. E. 561, 70 L. R. A. 722, 108 Am. St. Rep. 790, that a similar provision in an act in relation to employing master plumbers—an act concededly within the purview of the police power—was unconstitutional and void. The court say:

"It prohibits a business man, with financial means and business ability, and a registered master plumber, with the requisite mechanical skill, from uniting the financial and business ability of the one with the energy and mechanical skill of the other in a partnership for conducting a legitimate business. The right to form partnerships for the conduct of business has existed from time immemorial, and any interference with that right must be regarded as an unwarranted interference with individual freedom condemned by the Constitution."

It is true, of course, that this question is not presented here, for it is not claimed that the defendant was a partner of a licensed undertaker, but it serves to show the intent back of the enactment, and to indicate that its purpose was not the protection of the public, but for the aggrandizement of the undertakers who were in business at the time of the enactment, and who were undoubtedly instrumental in securing the legislation. Certainly no one outside of the undertakers' atmosphere has ever discovered any good reason why undertakers should be compelled to take out a license, independent of an embalmer's license, and, to quote the language of the court in Lochner v. New York, 198 U. S. 45, 64, 25 Sup. Ct. 539, 546, 49 L. Ed. 937, it is "impossible for us to shut our eyes to the fact that many of the laws of this character, while passed under what is claimed to be the police power for the pur-

pose of protecting the public health or welfare, are in reality passed from other motives. We are justified in saying so when, from the character of the law and the subject on which it legislates, it is apparent that the public health or welfare bears but the most remote relation to the law." An undertaker is defined to be "one who takes the charge and management of funerals," and a funeral is merely the disposition of the bodies of human beings after death, with the accompanying rites and ceremonies. This act does not pretend to regulate burials, or any of the incidents of the funeral. It does not provide for the adoption of rules and regulations governing funerals, except in relation to the embalming of the body, which precedes the burial, nor is there a suggestion in the statute of any evil, real or imaginary, to be corrected by the statute, in so far as it relates to the business of an undertaker. It is not the act of conducting funerals that is to be regulated, but the business of the undertaker. Under this act no citizen would be permitted to undertake the burial of any one, no matter what the circumstances, unless he was actually licensed, and, in the case of a firm, no matter how reliable they might be, and how fully they might intrust the work to a competent, licensed undertaker. Indeed, under the statute, a man could not conduct an undertaking establishment, either alone or with a partner, though the work of conducting funerals should be delegated entirely to a licensed undertaker, for the provision is that:

"If a firm or corporation shall desire to engage in the business or practice of undertaking, each member of the firm or the manager of each place of business conducted by the corporation shall be a licensed undertaker."

A corporation could employ a manager; but a firm, in order to do business, must be composed of licensed undertakers, and this to serve no possible purpose of a public nature than can be pointed out so far as we are able to discover. Certainly counsel for the respondent does not suggest anything to bring the statute within the police power as it is understood in our jurisprudence. The very able discussion of the limitations of the police power by Mr. Justice Hatch in People v. Beattie, 96 App. Div. 383, 89 N. Y. Supp. 193, which was cited with approval in Lochner v. New York, 198 U. S. 45, 63, 25 Sup. Ct. 539, 49 L. Ed. 937, makes it unnecessary to go into that branch of the case to any great extent. In the case cited it was said:

"It is now common learning that the police power which may be exercised by the state is very broad and comprehensive in its scope. Yet, however, broad and comprehensive it may be, it has its limitations, and must in its exercise have relation to the promotion of the health, comfort, safety, and welfare of society. If it does not fairly relate to some one of these objects and tend to promote the public weal in connection therewith, it does not come within the lawful right of the state to exercise the power."

Able counsel have presented this case, but no one has suggested how, even remotely, the health, comfort, safety, and welfare of society is involved in the licensing of the business of undertaking. It might be plausibly urged, perhaps, that a grocery store through carelessness in management might distribute disease and death through the community; and that, therefore, it should be regulated through a license system, but we fancy no one would undertake to say that it was within the constitutional power of the Legislature to absolutely forbid any one

engaging in the business of a grocer for a period of three years, and then only on condition of having served an apprenticeship, or working with some duly licensed grocer, but in the matter of conducting the business of an undertaker, even though the man conducting the business employs competent help, it is assumed that the Legislature is without limitation, for no fact is presented which would be even approximately as good a justification as might be urged in the case of a grocery store.

In Schnaier v. Navarre Hotel & Importation Co., 182 N. Y. 83, 88, 74 N. E. 561, 562, 70 L. R. A. 722, 108 Am. St. Rep. 790, the court summarizes the gist of a large number of decisions bearing upon the police power, the most salient being that the "common business and callings of life, the ordinary trades and pursuits which are innocent in themselves, and have been followed in all communities from time immemorial, must therefore be free in this country to all alike upon the same terms"; and in citing Lochner v. State of New York, supra, the court say:

"The principle that the individual right to make contracts in relation to business is a part of that liberty protected by the Constitution was asserted and maintained, and a statute of this state which made it a penal offense for a master to permit his servant to work more than 10 hours in the day has been held to be in conflict with that right, and was therefore unconstitutional and void. That case amply vindicates the right of the individual to freedom in the conduct of any legitimate business and his right to make contracts concerning the same."

In this case the right of the defendant to make a contract for the burial of the dead is denied, not because there is any pretense that any consideration of the welfare of society as a whole is involved, but because the Legislature has arbitrarily interfered and demanded that he should secure a license to do that which he had a perfect natural and constitutional right to do.

The judgment of conviction should be reversed.  All concur.

---

(125 App. Div. 705.)
### BALLIET v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department.  April 24, 1908.)

1. INSURANCE—ACTION ON POLICY—QUESTION FOR JURY.
    In an action on a life insurance policy, whether insured voluntarily allowed the policy to lapse, or whether that result was accomplished by the wrongful act of the insurer, *held* to be a question for the jury.

