## PEOPLE v. HARRISON.

(Supreme Court, Appellate Division, First Department.  December 30, 1915.)

1. LICENSES ⬦⟲7—CONSTITUTIONALITY OF STATUTE—LIMITATION ON OCCUPATION—SKILL REQUIRED.

> Public Health Law (Consol. Laws, c. 45) § 295, as amended by Laws 1913, c. 71, providing the requirements and the qualifications for engaging in business as an undertaker, is unconstitutional and void, since it requires that the skill required in an undertaker be acquired through two years' apprenticeship with an undertaker, and, although the public health may demand a certain degree of skill in caring for the dead, it

is incompetent for the Legislature to regulate the method or period by or during which that degree of skill shall be attained.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 7–15, 19; Dec. Dig. ☞7.]

2. LICENSES ☞7—LIMITATION OF OCCUPATIONS—ARBITRARY DISTINCTIONS.

Laws 1913, c. 71, providing the requirements and the qualifications for engaging in business as an undertaker, is subject to criticism in that it requires undertakers to serve an apprenticeship of two years and to secure a license, but permits an apprentice to prepare bodies for burial and conduct funerals without license or examination, except where the death results from a contagious disease.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 7–15, 19; Dec. Dig. ☞7.]

3. CONSTITUTIONAL LAW ☞48—VALIDITY OF STATUTE—PRESUMPTIONS.

That, after a statute was declared unconstitutional, another was passed by the Legislature, but vetoed by the Governor, whereupon a new statute, sought to be framed under the Constitution, was enacted and signed, indicates such deliberation in its passage as to raise every presumption in favor of the validity of the new statute.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. ☞48; Statutes, Cent. Dig. § 56.]

4. LICENSES ☞7—LIMITATION OF OCCUPATION—ARBITRARY DISTINCTIONS—PUBLIC HEALTH.

Laws 1913, c. 71, providing the qualifications, requirements, and license for undertakers, being an encroachment on the right of an individual to engage in a lawful business, must have relation to the public health or welfare; and since there is nothing to show that the Legislature had evidence before it tending to show demand of public health for its enactment, the statute is unconstitutional.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 7–15, 19; Dec. Dig. ☞7.]

5. STATUTES ☞64—EFFECT OF PARTIAL INVALIDITY.

Laws 1913, c. 71, providing the qualifications, requirements, and license for undertakers, all its provisions being interdependent, and being void as to the provision requiring two years' apprenticeship, is absolutely void, because the remainder of the act applies only to undertakers in business at its enactment; that, standing alone, being an unjust discrimination.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. ☞64.]

Ingraham, P. J., and Dowling, J., dissenting.

Appeal from Trial Term, New York County.

Edward Harrison was charged with engaging in business as an undertaker without having complied with the provisions of Public Health Law (Consol. Laws, c. 45) § 295, as amended by Laws 1913, c. 71. Demurrer to the information sustained, and the People appeal. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Edward G. Griffin, Deputy Atty. Gen., for the People.
Arthur F. Driscoll, of New York City, for respondent.

LAUGHLIN, J. The demurrer evidently was interposed to contest the constitutionality of the statute forbidding the practice of the

business of undertaking without a license, and the only questions presented by the appeal relate to the constitutionality of the law.

The first legislation in the state regulating embalming and requiring a license therefor was chapter 555 of the Laws of 1898, which created the "board of embalming examiners of the state of New York," and provided for examinations with respect to the qualifications of the applicants for a license to engage "in the business or practice of embalming," and for their registration, and prohibited embalming without a license from said board. Section 4 of that statute provided for the issuance as therein provided of licenses without examination to persons then engaged in the business, and sections 5 and 6 required an application for a license and an examination of any persons thereafter desiring to engage in that business; but it prescribed no period of apprenticeship or previous experience as a condition of entering the examination or receiving such license. By section 9 of the act practicing without a license was prohibited. Chapter 498 of the Laws of 1904 inserted in that statute section 6a relating to licensing *undertakers,* which, so far as appears, was the first legislation on that subject. That section required those thus engaged in the business of undertaking and holding licenses as embalmers, "or engaged in such business with a licensed embalmer" and desiring to continue in the undertaking business, to present on or before January 1, 1905, an application to the state board of embalming examiners for a license to practice *undertaking,* and as no examination was required it was evidently contemplated that the license should be granted to such persons without examination; but it prohibited any one from thereafter engaging in business as an undertaker without having been duly licensed as an embalmer and having been employed as an assistant to a licensed undertaker "continuously for a period of at least three years," and having also duly applied for and obtained a license as an undertaker, which license, however, it was contemplated was to be issued on proof of the qualifications specified without examination. Section 6a was amended by chapter 572 of the Laws of 1905, by modifying the requirement that at least one member of a firm engaged in the business should obtain a license and by providing that *every* member of such a firm should obtain a license, and in this form by chapter 49 of the Laws of 1909, being chapter 45 of the Consolidated Laws, it became section 295 of the Public Health Law.

The constitutionality of the provisions of section 6a as thus amended was presented for judicial decision in People v. Ringe, 197 N. Y. 143, 90 N. E. 451, 27 L. R. A. (N. S.) 528, 18 Ann. Cas. 474, and they were declared to be unconstitutional in so far as they required a license as a condition of engaging in business as an undertaker, for the information in that case charged the defendant, as does the information in the case at bar, with having engaged in business as an undertaker without having a license, and he was convicted on the trial; but the conviction was reversed by the Appellate Division (125 App. Div. 592, 110 N. Y. Supp. 74), and the reversal affirmed by the Court of Appeals. The opinion of the Court of Appeals recognized and declared the right of the Legislature to provide for the licensing of those engaged in the business of embalming and as undertakers; **but**

Judge Chase, writing for a unanimous court, after recognizing this power of the Legislature in the interests of the public health, said:

"A statute passed pursuant to the police power should be reasonable. Its real purpose must be to protect the public health, morals, or general welfare. A statute cannot, under ,the guise of the police power, but really to affect some purpose not within such power, arbitrarily interfere with a person or a property right. The statute under consideration unnecessarily interferes in several particulars with that liberty of person and property guaranteed by the Constitution."

The court then, citing and following Wyeth v. Board of Health, 200 Mass. 474, 86 N. E. 925, 23 L. R. A. (N. S.) 147, 128 Am. St. Rep. 439, declared that the public health did not require that a person should be prohibited from carrying on the business of an undertaker merely because he was not a licensed embalmer. The court then proceeds to consider the provisions of the act forbidding any person acting as an undertaker unless he has been employed as an assistant to a licensed undertaker for a period of at least three years, and declared that the provision unnecessarily interfered with the common-law right of any person to engage in a lawful business for the reason that "it makes a particular form of acquiring skill and knowledge essential, and forfeits the right to count the time so engaged in that particular education at each time when there is a break in the continuity of the service," and then, applying the doctrine of Schnaier v. Navarre Hotel & Importation Co., 182 N. Y. 83, 74 N. E. 561, 70 L. R. A. 722, 108 Am. St. Rep. 790, declared the provisions of the said section 6a in so far as they prohibited a firm from engaging in the business or practice of undertaking unless each member of the firm is a licensed undertaker, unconstitutional. The opinion closes as follows:

"We cannot refrain from the thought that the act in question was conceived and promulgated in the interests of those then engaged in the undertaking business and that the relation which the business bears to the general health, morals, and welfare of the state had much less influence upon its originators than the prospective monopoly that could be exercised with the aid of its provisions. We sustain the authority of the Legislature to pass a statute to license and regulate the business of undertakers to protect the health, morals, and general welfare of the state, but hold that the statute in question, so far as considered by us, is an unnecessary and unwarrantable interference with constitutional rights."

The next legislation on the subject was enacted by chapter 841 of the Laws of 1911, which amended said section 295. It is not necessary to consider the effect of that amendment, for the question here presented arose on the provisions of the statute as they existed at the time of the commission of the alleged offense on the 20th day of March, 1914. The next amendment of the section was made by said chapter 71 of the Laws of 1913, which was in force at the time of the alleged offense. Said section as amended, so far as material to the present inquiry, provides that any person actually engaged in the business of undertaking at the time the amendment took effect, who desired to continue in such business, should on or before the 31st day of January, 1913, file with the state board of embalming examiners an application as therein provided for authority to do business as an undertaker; that

every undertaker who should take into his employ an apprentice should report that fact to the state board within three months, and such other information as might be required by the board; that the board should issue to such apprentice, "if his character and qualifications are satisfactory, a certificate of registration as a 'registered apprentice,'" and that any applicant for a license who was not actually engaged in the business at the time of the enactment of the amendment should present proof in the manner and form required by the board showing that he had served as an apprentice to an undertaker at least two years in the aggregate; that in lieu of the certificate of registration satisfactory proof of practical experience with an undertaker "for such period, or any portion thereof prior to the passage of this act, may be accepted by said board," but that after the 1st of June, 1915, no candidate should be eligible to enter the examination for a license as an undertaker unless his certificate of registration shall have been filed as therein provided; and that the board should issue to applicants passing a satisfactory examination "in sanitation, disinfection, preparation, and care of human dead bodies for burial or transportation" a license to engage in the business of undertaking. It was further provided that if a firm or corporation should desire to engage in the business of undertaking, at least one member of the firm, or the manager of each place of business conducted by a corporation, should have a license, and that no member of a firm not licensed as an undertaker should perform duties with respect to the care, preparation, and disposal and burial of a dead human body, and forbid an undertaker, firm, or corporation to permit an assistant who was not a duly licensed undertaker or embalmer or registered apprentice to assume the care for burial or transportation of the body of any person who had died of a communicable disease, and forbid any person to practice or hold himself out as an undertaker unless he had complied with the provisions of the section as thus amended *or* with chapter 498 of the Laws of 1904, as amended by chapter 572 of the Laws of 1905, *or* of chapter 841 of the Laws of 1911.

The difference between the provisions of the statute as they existed when People v. Ringe was decided by the Court of Appeals and as they were at the time of the commission of the alleged offense, claimed to be material, is the elimination of the provision to the effect that no person could be granted a license as an undertaker unless he held a license as an embalmer, and the amendment of the provision with respect to firms, as already stated, and the substitution for the provision requiring three years' consecutive service as an apprentice of the provision requiring two years' service in the aggregate in that capacity.

[1] It is contended on the part of the people that these changes in the law fully meet the criticism of the Court of Appeals in People v. Ringe, supra. I am of opinion that they do not. The statute still requires that the requisite skill and knowledge *shall be obtained in a particular manner*, to wit, by service as a registered apprentice for at least two years in all cases where the application for a license is made after June 1, 1915, and service as a registered apprentice for two

years, or practical experience with an undertaker, prior to the time the act as thus amended took effect, acceptable to the board in lieu of such service as a registered apprentice, where the application for a license is made on or prior to June 1, 1915. It was, as the Court of Appeals declared in People v. Ringe, supra, competent for the Legislature to regulate the business of undertaking and to subject *undertakers* to an examination and to require that they obtain licenses; but I am unable to perceive any theory upon which the public health or welfare requires, as a condition precedent to carrying on the *business* of an undertaker, not involving the *embalming* of dead bodies, service as a registered apprentice with an undertaker for a period of two years. The public health and welfare may require, as the Legislature has required, an examination of applicants for such licenses with respect to sanitation, disinfection, and the preparation and care of bodies for burial or transportation, and the examination might well be extended to the laws and health regulations applicable to the care and interment of the dead, depending upon the cause of death; but it is, I think, manifest that the knowledge essential to qualify one to enter an examination for a license as an undertaker might be acquired in a medical or other school for such purpose, or by special training and observation, without actually serving as an apprentice, and in any event the requirement of *two years'* service in such capacity is unreasonable.

[2] The statute in its present form is subject to the criticism that it aims at the undertaking business rather than at those conducting funerals, for it does not require that funerals shall be conducted under the immediate supervision of a licensed undertaker, and plainly contemplates that they may be conducted by his employés, who are not even registered apprentices, excepting in the case of funerals of those dying of a communicable disease, and in such cases the registered apprentice is authorized to assume the care and preparation of the bodies for burial or transportation, although he has been subjected to no examination and has obtained no license, and he may perform these duties as his first acts as an employé or apprentice of an undertaker.

[3, 4] The learned Deputy Attorney General draws attention to the fact that a bill designed by the Legislature to overcome the objections presented by the decision of the Court of Appeals in People v. Ringe, supra, was vetoed by the Executive on the authority of that decision shortly before he signed the amendment to section 295 enacted in 1911, and that the section was further amended in 1913, as indicating due deliberation on the part of the Legislature and the Executive, and an effort to enact the law in the interests of the public health and welfare, and he rightly contends that every reasonable presumption must be indulged in in favor of the validity of the statute. Nevertheless it does not appear that there was any legislative investigation on the subject, or that the Legislature had before it evidence tending to show that the public health or welfare would be promoted by such legislation; and since the enactment is an encroachment upon the right of the individual to engage in a lawful business, it must have some apparent relation to the public health or welfare to warrant its enactment (Colon v. Lisk, 153 N. Y. 188, 47 N. E. 302, 60 Am. St.

Rep. 609; People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465; Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636; People v. Beattie, 96 App. Div. 383, 89 N. Y. Supp. 193; State v. Donaldson, 41 Minn. 74, 42 N. W. 781); and we see in its provisions, as enacted, none in so far as this long term of apprenticeship is required.

In State v. Walker, 48 Wash. 8, 92 Pac. 775, 15 Ann. Cas. 257, the Supreme Court of Washington declared a statute requiring an apprenticeship for two years with a qualified and practicing barber as a condition precedent to obtaining a certificate as a barber void, on the ground that *competency* only was required, and that it was not within the province of the Legislature to provide that it should be attained in a particular manner. In Smith v. Texas, 233 U. S. 630, 34 Sup. Ct. 681, 58 L. Ed. 1129, L. R. A. 1915D, 677, Ann. Cas. 1915D, 420, the Supreme Court, in declaring a statute of Texas, which provided that no person should act as a conductor on a freight train who had not served for two years as a brakeman or conductor on a freight train, unconstitutional, discussed at length the constitutional rights of citizens and the power of the Legislatures, and, among other things, said:

"None of the cases sustains the proposition that, under the power to secure the public safety, a privileged class can be created, and be then given a monopoly of the right to work in a special or favored position. Such a statute would shut the door, without a hearing, upon many persons and classes of persons who were competent to serve, and would deprive them of the liberty to work in a calling they were qualified to fill with safety to the public and benefit to themselves. * * * So that the case distinctly raises the question as to whether a statute, in permitting certain competent men to serve, can lay down a test which absolutely prohibits other competent men from entering the same private employment. It would seem that to ask the question is to answer it, and the answer in no way denies the right of the state to require examinations to test the fitness and capacity of brakemen, firemen, engineers, and conductors to enter upon a service fraught with so much of risk to themselves and to the public. But all men are entitled to the equal protection of the law in their right to work for the support of themselves and families. A statute which permits the brakeman to act, because he is presumptively competent, and prohibits the employment of engineers and all others who can affirmatively prove that they are likewise competent, is not confined to securing the public safety, but denies to many the liberty of contract granted to brakemen and operates to establish rules of promotion in a private employment. If brakemen only are allowed the right of appointment to the position of conductors, then a privilege is given to them which is denied all other citizens of the United States. If the statute can fix the class from which conductors on freight trains shall be taken, another statute could limit the class from which brakemen and conductors on passenger trains could be selected, and so, progressively, the whole matter, as to who could enter the railroad service, and who could go from one position to another, would be regulated by statute."

These observations are in the main applicable here.

[5] I am of opinion that no prosecution for engaging in the business of an undertaker without a license can be sustained under the provisions of this section, for if the provisions with respect to the apprenticeship are unconstitutional, there remain nothing but the provisions requiring that those engaged in the business at the time the act took effect shall obtain a license, and it is not to be presumed that the Legislature would have enacted the provisions requiring only

those then engaged in the business to procure licenses, for that would be an unjust discrimination, and it is manifest that all provisions of the section are connected and dependent upon one another, and were designed to accomplish the purpose of requiring all engaging in *business* as undertakers to procure licenses, and therefore, some of the provisions being unconstitutional, the entire enactment must fall. Jones v. Jones, 104 N. Y. 234, 10 N. E. 269; People ex rel. Rochester v. Briggs, 50 N. Y. 553; Warren v. Mayor, 68 Mass. (2 Gray) 84; Cooley's Constitutional Limitations (7th Ed.) page 247; Black on Constitutional Law (3d Ed.) page 73.

It follows, therefore, that the judgment should be affirmed. Settle order on notice.

CLARKE and SCOTT, JJ., concur. INGRAHAM, P. J., and DOWLING, J., dissent.