GEORGE MARALLIS *et al.* Appellants, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed June 24, 1932—Rehearing denied October 5, 1932.*

JONES, J., HEARD, C. J. and ORR, J., dissenting.

WILLIAM SHERMAN STAHL, (ROBERT E. KINNARE, of counsel,) for appellants.

WILLIAM H. SEXTON, Corporation Counsel, DANIEL A. ROBERTS, EDWARD J. CARMODY, and WILLIAM H. BECKMAN, (WILLIAM V. DALY, and GEORGE E. WOODS, of counsel,) for appellees.

Mr. JUSTICE DeYOUNG delivered the opinion of the court:

George Marallis and fifty other persons filed their bill of complaint in the superior court of Cook county against the city of Chicago, the commissioners of Lincoln Park, the West Chicago Park Commissioners and the town of Cicero to enjoin the defendants from interfering with the vending, hawking and peddling of goods by the complainants. The defendants filed a joint and several demurrer to the bill, the demurrer was sustained, and the bill was dismissed for the want of equity. The validity of a statute is involved in the case and the complainants prosecute an appeal directly to this court.

The appellants allege in their bill that they are residents of the city of Chicago; that they are honorably discharged veterans of the armed forces of the United States; that on August 1, 1931, by authority of an act entitled "An act permitting former soldiers and sailors of the United States or of the State of Illinois, honorably discharged from the military, naval or marine service of the United States, or of the State of Illinois, to vend, distribute, hawk and peddle goods, wares, fruits or merchandise, not prohibited by law, in any county, town, village, incorporated city or municipality in the State of Illinois," approved May 11, 1901, in force July 1, 1901, as subsequently amended, (Cahill's Stat. 1931, p. 458; Smith's Stat. 1931, p. 486), each of the appellants for himself solely, began the vending, hawking and peddling of goods, wares and merchandise upon the public streets, parks, beaches and places of the several appellees; that they pursued their vocation in an orderly manner and that it constituted their sole source of income, and

that on August 2, 1931, without just cause and to their irreparable damage, they were forcibly prevented by police officers of the defendant municipalities from pursuing their occupation. Upon these grounds the desired injunction is sought.

The act upon which the appellants rely reads as follows: "Section 1. On and after the passage of this act, all former soldiers and sailors of the United States, or of the State of Illinois, honorably discharged from the military, naval or marine service of the United States, or of the State of Illinois, including former soldiers and sailors of the World War, shall be permitted to vend, distribute, hawk and peddle goods, wares, fruits or merchandise, not prohibited by law, in any county, town, village, incorporated city or municipality, within this State, without a license: Provided said soldier or sailor is engaged in the vending, distributing, hawking or peddling of said goods, wares, fruits or merchandise, for himself only. Section 2. Upon the presentation of his certificate of discharge to the clerk of any county, town, village, incorporated city or municipality in this State, and showing proofs of his identity as the person named in his certificate of honorable discharge, the clerk shall issue to such former soldier or sailor of the United States or of the State of Illinois, a license, but such license shall be free, and said clerk shall not collect or demand for the county, town, village, incorporated city or municipality, any fee therefor. Any clerk of any county, town, village, incorporated city or municipality in this State, who shall violate any of the foregoing provisions of this act, by failing or refusing to comply with such provisions as herein directed, shall be fined in a sum not less than ten ($10.00) dollars nor more than fifty ($50.00) dollars, to which may be added imprisonment in the county jail, not exceeding ten days."

The appellants, in seeking a reversal of the decree, contend that honorably discharged soldiers, having rendered a peculiar and extraordinary service, constitute a class founded

upon a natural distinction; that this distinction justifies legislation granting them privileges, exemptions and immunities from the burdens resting upon other citizens and that the statute they invoke is therefore valid. To sustain the decree, the appellees, on the contrary, insist that the act in question constitutes special or class legislation which arbitrarily grants privileges and immunities to a particular class and denies persons outside of that class, the equal protection of the laws constitutionally guaranteed and that the act is therefore void.

The first section of the fourteenth amendment to the Federal constitution declares that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Due process of law and the equal protection of the laws, the Supreme Court of the United States said in *Duncan* v. *Missouri,* 152 U. S. 377, "are secured, if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government." The equal protection of the laws is a pledge of the protection of equal laws. (*Yick Wo* v. *Hopkins,* 118 U. S. 356). By the quoted provisions of the fourteenth amendment, it was intended not only that there should be no arbitrary deprivation of life, liberty or property, but also that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like

circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses. *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540; *Hayes* v. *Missouri,* 120 id. 68; *Yick Wo* v. *Hopkins,* 118 id. 356, 369; *Barbier* v. *Connolly,* 113 id. 27.

The invalidity of a statute obnoxious to the fourteenth amendment is well illustrated by the case of *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540. The Illinois Trust act of June 20, 1893, prohibited trusts or combinations in restraint of trade or competition. By section 9 the provisions of the act were made inapplicable "to agricultural products or livestock while in the hands of the producer or raiser;" and section 10 provided that the purchaser of any article or commodity from such a trust or combination, should not be liable for the price and might plead the act as a defense to any suit therefor. Suit was instituted for sewer pipe sold and delivered and the act was interposed as a defense. The Supreme Court of the United States held that the discrimination created by the ninth section rendered the act repugnant to the provisions of the fourteenth amendment respecting the equal protection of the laws. The court said that under the "statute all except producers of agricultural commodities and raisers of livestock, who combine their capital, skill or acts for any of the purposes named in the act, may be punished as criminals, while agriculturists and livestock raisers, in respect of their products or livestock in hand, are exempted from the operation of the statute, and may combine and do that which, if done by others, would be a crime against the State. The statute so provides notwithstanding persons engaged in trade or in the sale of merchandise and commodities, within the limits of a State, and agriculturists and raisers of livestock, are all in the same general class, that is, they are all alike engaged

in domestic trade, which is, of right, open to all, subject to such regulations, applicable alike to all in like conditions, as the State may legally prescribe."

Supplementing the provisions of the fourteenth amendment to which reference has been made, section 22 of article 4 of the constitution of this State prohibits the passage of a special law granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. This provision prevents the enlargement of the rights of one or more persons in discrimination against the rights of others. In many cases this constitutional requirement has been invoked and it often has been held that, to avoid falling within the constitutional prohibition of local or special legislation the classification of subjects or objects must be based upon some reasonable and substantial difference of kind, situation or circumstance bearing a proper relation to the purposes to be attained by the statute. (*L'Hote* v. *Village of Milford,* 212 Ill. 418; *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 id. 302; *People* v. *Kastings,* 307 id. 92). While it is competent for the legislature to determine upon what difference a distinction may be made for the purpose of statutory classification of objects otherwise having a resemblance, and while the legislature is not required to be scientific, logical or consistent in its classification, yet these propositions however stated are always subject to the qualification that the power must not be arbitrarily exercised and that the distinction has a reasonable basis when considered with reference to the purposes of the legislation. *Magoun* v. *Illinois Trust, etc. Bank,* 170 U. S. 283; *Clark* v. *Kansas City,* 176 id. 114; *Gundling* v. *Chicago,* 177 id. 183; *Petit* v. *Minnesota,* 177 id. 164; *Williams* v. *Fears,* 179 id. 270; *American Sugar Refining Co.* v. *Louisiana,* 179 id. 89; *Griffith* v. *Connecticut,* 218 id. 563; *Chicago, Rock Island and Pacific Railway Co.* v. *Arkansas,* 219 id. 453, 466; *Lindsley* v. *Natural Carbonic Gas Co.* 220 id. 61, 79; *Fifth Avenue*

*Coach Co.* v. *New York,* 221 id. 467; *Murphy* v. *California,* 225 id. 623; *Rosenthal* v. *New York,* 226 id. 260, 269, 270; *Missouri, Kansas and Texas Railway Co.* v. *Cade,* 233 id. 642; *International Harvester Co.* v. *Missouri,* 234 id. 199, 214; *Stewart* v. *Brady,* 300 Ill. 425; *Bagdonas* v. *Liberty Land and Investment Co.* 309 id. 103.

Each person subject to the laws has a right that he shall be governed by general, public rules. Laws and regulations entirely arbitrary in their character, singling out particular persons not distinguished from others in the community by any reason applicable to such persons, are not of that class. Distinctions in rights and privileges must be based upon some distinction or reason applicable to others. (*Harding* v. *People,* 160 Ill. 459). It is only when such distinctions exist that differentiate, in important particulars, persons or classes of persons from the body of the people, that laws having operation only on such particular persons or classes of persons have been held to be valid enactments. *Braceville Coal Co.* v. *People,* 147 Ill. 66.

The Federal Supreme Court was unable to discover a reasonable basis for the legislative classification invoked to sustain the statute involved in *Connolly* v. *Union Sewer Pipe Co. supra.* The court said: "The difficulty is not met by saying that, generally speaking, the State when enacting laws may, in its discretion, make a classification of persons, firms, corporations and associations, in order to subserve public objects. For this court has held that classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the fourteenth amendment forbids this. * * * No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which

is the foundation of free government. * * * It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground— some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection.'" The court declared that a statute such as the one under review was not a legitimate exercise of the power of classification; that it rested upon no reasonable basis; that it was purely arbitrary, and that it plainly denied the equal protection of the laws to those against whom it discriminated.

. An information was filed in *State* v. *Shedroi,* 75 Vt. 277, against the defendant for pursuing the vocation of a peddler without a license. By a statute residents of Vermont who served as soldiers in the Civil War and were honorably discharged were exempt from the payment of the license fee imposed upon all other persons. It was urged that the law unjustly discriminated in favor of such soldiers and against other persons, and therefore denied the equal protection of the laws guaranteed by the fourteenth amendment. The Supreme Court of Vermont sustained a demurrer to the information declaring that the legislative classification had no reasonable basis and was arbitrary, and that the exemption of one class from the payment of the tax required of all other persons exercising the same calling was pure favoritism and a denial of the equal protection of the laws. The court said: "Upon what basis does the attempted classification rest? There is no basis upon which it can rest except that persons in the one class served as soldiers in the Civil War and were honorably discharged, and those of the other class did not so serve, or were not honorably discharged. This classification is dependent solely on a condition of things long since past, and not on a pres-

ent situation or condition, nor on a substantial distinction having reference to the subject matter of the law enacted. The veterans were originally from no particular class, and when discharged from the army, they returned to no particular class,—they again became a part of the general mass of mankind, with the same constitutional rights, privileges, immunities, burdens and responsibilities as other citizens similarly circumstanced in law, in the same jurisdiction. Assuming that thus to have served as a soldier and to have received an honorable discharge may well merit reasonable considerations at the hands of the State in recognition of patriotism and valor in defense of a common country, yet such considerations cannot exceed those constitutional limits established for the welfare and protection of the whole; for equal protection of the laws requires 'that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privileges conferred and liabilities imposed.' It cannot be said that service as a soldier in the Civil War and the receipt of an honorable discharge bear any relation to the business of a peddler as defined by the law under consideration. There is no difference between the present conditions and circumstances of such veterans and those of other citizens regarding the relations to the law or the attempted classification. In fact, according to their relations, they are of the same class, and any attempted classification between them is but a mere arbitrary selection, and based upon no reasonable grounds."

A section of the Iowa code required all peddlers plying their vocation outside of any city or town to secure a license from the county auditor and to pay a tax therefor, but persons who had served in the Union army or navy were exempted from the payment of the tax. In *State* v. *Garbroski*, 111 Iowa, 496, the defendant was convicted of peddling without a license in violation of the statute. He contended that the statute contravened section 6 of article 1 of the State constitution, which provided that, "All laws

of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen or class of citizens privileges or immunities, which upon the same terms shall not equally belong to all citizens." The Supreme Court of Iowa held that the statute was void, declaring that the classification attempted rested solely on a past and completed transaction having no relation to the particular act and that no differences existed between the exempted class and the other citizens of the State which justified the exemption. The court said: "But the work of a peddler calls for no qualities such as a soldier or sailor acquires in the service. Equality in right, privilege, burdens and protection is the thought running through the constitution and laws of the State; and an act intentionally and necessarily creating inequality therein, based on no reason suggested by necessity or difference in condition or circumstances, is opposed to the spirit of free government, and expressly prohibited by the constitution. * * * The classification attempted by this statute is based on no apparent necessity, or difference in conditions or circumstances that have any relation whatever to the employment in which the veteran of the Civil War is authorized to engage without paying license."

Numerous other authorities may be cited to the effect that neither in tax laws nor in police regulations can the fact of prior completed military service be made the basis of discrimination between citizens. Among these authorities are *State* v. *Whitcom*, 122 Wis. 110; *Brown* v. *Russell*, 166 Mass. 14; *Commonwealth* v. *Hana*, 195 id. 262; *Adams* v. *Standard Oil Co.* 97 Miss. 879; *In re Keymer*, 148 N. Y. 219; *City of Laurens* v. *Anderson*, 75 S. C. 62, and *Ex parte Jones*, 38 Texas Cr. 482.

The first section of the act upon which the appellants rely provides that all former soldiers and sailors of the United States or of this State, honorably discharged from the military, naval or marine service, shall be permitted to vend, distribute, hawk and peddle goods, wares, fruits or

merchandise, not prohibited by law, without a license. The second section of the same act requires the clerk of the particular municipality, upon the presentation of the proper certificate of discharge and proof of identity, to issue a license to the former soldier or sailor for his pursuit of the occupation stated without collecting a fee for the license. So far as honorably discharged soldiers and sailors who desire to peddle goods are concerned, the first section dispenses with the necessity of obtaining a license, while the second makes the issuance of such a license mandatory. Apart from this inconsistency and the omission from the second section of any provision for an inquiry into the fitness and character of the applicant, for a bond or other requirement to secure obedience by the licensee to the laws and ordinances regulating his occupation, and for the termination of the license by reason of misconduct or a breach of the law, the ultimate question in the present case is whether an honorable discharge from the military, naval or marine service is a reasonable basis for the exemption of the holder of such a discharge from appropriate regulation and the payment of a license fee which all other persons desiring such a license are required to pay.

The sole ground for the discrimination made by the act under review is an honorable discharge from the service defined. All persons holding such discharges are declared exempt from regulation imposed by public authority and the payment of the license fee without regard to the length or character of their military, naval or marine service, their sound or debilitated condition of body or their affluence or poverty. Events long since past, and neither present condition nor a difference in situation between the honorably discharged soldiers and the other members of the community or State, are therefore the basis of the legislative classification.

. The soldier or sailor, after his discharge, returned to civil life, became a part of the community in which he

lived and enjoyed the same rights and was subjected to the same burdens as other citizens similarly circumstanced legally in the same jurisdiction. The power to grant pensions or bounties to discharged soldiers and sailors is well established, but is not involved in this case. Certainly no considerations of gratitude to them could authorize the legislature to exempt them, as a class, from all taxation or from punishment for crime. The classification made by the legislature in the act under consideration bears no relation whatever to the subject matter of the act, and the classification has no reasonable basis. The act denies the equal protection of the laws and it grants a special privilege or immunity to a certain class in violation of constitutional provisions. It is therefore void.

The decree of the superior court is affirmed.

*Decree affirmed.*

JONES, J., HEARD, C. J., and ORR, J., dissenting:

The majority opinion holds void the act permitting former soldiers and sailors of the United States to peddle fruits and merchandise without paying a municipal license fee. The holding is based on the theory that the statute constitutes special or class legislation and is contrary to the provisions of section 22 of article 4 of the constitution of the State of Illinois, and also that it violates the provision for the equal protection of the laws contained in section 1 of amendment 14 of the constitution of the United States. The essential question in this case is whether or not there is a reasonable basis for extending to honorably discharged soldiers and sailors, as a separate class, the privilege of peddling and vending merchandise in municipalities without a license.

The majority of the court approves the doctrine announced in *State* v. *Shedroi,* 75 Vt. 277. The legislature of Vermont passed an act exempting veterans of the Civil War from payment of certain license fees. It was declared to

be class legislation. The reasoning of the court is to be found in the following language: "The veterans were originally from no particular class, and when discharged from the army they returned to no particular class—they again became a part of the general mass of mankind, with the same constitutional rights, privileges, immunities, burdens and responsibilities as other citizens similarly circumstanced, in law, in the same jurisdiction." If it is true that the soldier or sailor after his discharge returned to civil life, became a part of the community in which he lived, enjoyed the same privileges and was subjected to burdens and handicaps to which other citizens of similar age and circumstances were subjected, there would manifestly be no reasonable basis for the classification made by the statute. A very great majority of the soldiers and sailors who served in the late war were between the ages of eighteen and thirty-one. They were in the formative period of their lives. It is at such a time that young men make their vital preparations for occupational and professional careers. But the war definitely interrupted their studies, vocations and businesses. The men of similar ages who remained at home enjoyed exceptional and unprecedented opportunities for gainful employment. The soldiers came home handicapped by absence from business and schools and burdened with the baneful effects of tremendous inflation of values which set in soon after their discharge. Under the circumstances it seems apparent that they constituted a distinct class quite competent to be distinguished from the rest of our citizenry in matters of legislation—a class created by their defense of country and the consequent deprivation of opportunity which had been open to others.

Notwithstanding a different view has been expressed by some courts, we believe the prevailing rule is that ex-soldiers may be segregated into a class for the purpose of extending bounty and reward. The right granted by the act is a privilege given former soldiers and sailors by the govern-

ment in consideration of military services rendered in its behalf. That privilege has much the same basis as the granting of pensions. It is designed to assist the soldier or sailor in providing for his daily wants. It is not a matter of contract and is not founded upon any legal liability. It is in the nature of a reward given by the government in consideration and recognition of meritorious past services, and has been described as a bounty springing from the appreciation and graciousness of the sovereign and may be given or withheld at its pleasure. (*People* v. *Retirement Board,* 326 Ill. 579; *Eddy* v. *Morgan,* 216 id. 437.) According to the text in 21 R. C. L. 239, the granting of a reward to soldiers and sailors in this country had its origin in the Revolution, "and in the long span of time since the constitution was adopted, the National government has, in pensions granted and privileges extended, treated those who served her in her hour of peril with generosity." The power to grant bounty to former soldiers and sailors as a class is coeval with the organization of the government under the present constitution and has been continued without interruption to the present time. *United States* v. *Hall,* 98 U. S. 343, 25 L. ed. 180.

The defendants contend that the service of a soldier bears no relation to the business of a peddler, and therefore no basis exists for placing soldiers in a different class and discriminating in their favor against other citizens. Of course, there is no relation between the service of a soldier and the business of a peddler, but there is a relation between the duty of the sovereign growing out of the service of a soldier and the granting of privileges to him which will enable him to provide for his daily needs. That relation has been made the basis of a great deal of legislation of this character by both Federal and State governments.

Because of the above reasons we think the demurrer should have been overruled.