(No. 31701.—

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error, *vs.* DELBERT DEWITT BROWN, Defendant in Error.

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

IVAN A. ELLIOTT, Attorney General, of Springfield, and ROBERT H. CHASE, State's Attorney, of Metropolis, (HARRY L. PATE, of Tuscola, and WILLIAM C. WINES, RAYMOND S. SARNOW, and JAMES C. MURRAY, all of Chicago, of counsel,) for the People.

ROY R. HELM, of Metropolis, for defendant in error.

THOMAS H. ARMSTRONG, of Decatur, *amicus curiae.*

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

An amended information filed in the county court of Massac County contained the charge defendant in error Brown had engaged in the business of master plumber in Metropolis when he did not have a master plumber license as required by the Illinois Plumbing License Law. (Ill. Rev. Stat. 1949, chap. 111½, pars. 95 to 116, incl.) Brown filed a motion to quash the information, alleging the Plumbing License Law to be unconstitutional for several reasons. The county court entered a judgment, declaring sections 2, 5 and 7 of the act violated articles II and III of the State constitution and the fourteenth amendment to the Federal constitution, and Brown was ordered discharged from custody. This court allowed the People a writ of error under

section 17 of division XIII of the Criminal Code. Ill. Rev. Stat. 1949, chap. 38, par. 747.

Defendant concedes the State, in the lawful exercise of its police power, may regulate the trade or occupation of plumbing, but contends the act in question does not constitute a lawful exercise thereof. The legislature declared it to be "An Act in relation to the regulation of plumbing and licensing of Master Plumbers, Journeyman Plumbers and registration of Plumber's Apprentices, and for the protection of public health, and repeal of a certain Act therein named." The act under attack is the third one enacted by the legislature for the regulation of plumbers and the plumbing trade or occupation. The first was the Plumbing License Act of 1897 (Laws of 1897, p. 279) ; it was succeeded by the Plumbers Licensing, Supervision and Inspection Act of 1917, (Laws of 1917, p. 520,) which was repealed by the present act. The validity of the present act has never been attacked, wholly or in part, in this court, except as to whether it applied to the trade of drain layer. *Scully* v. *Hallihan,* 365 Ill. 185.

The People having assigned error on the judgment holding the listed sections of the act invalid, this court finds it necessary in determining that question of error to subject the whole of the act to a careful analysis, which in turn requires a somewhat detailed statement of, or quotations from, several of the sections thereof. Section 1A defines "plumbing" as that word is used in the act. It is set forth in *Scully* v. *Hallihan,* 365 Ill. 185, 189,) except for the subsequent amendment (Laws of 1939, p. 836,) which declared "plumbing" as defined in the section was not applicable to property outside the corporate limits of a city, village or incorporated town and not subdivided into lots or blocks pursuant to law. Section 1B defines "Department" to mean the State Department of Registration and Education; similarly, section 1C defines "Board" to mean the State Board of Plumbing Examiners. Section 1D de-

clares that "master plumber," when used in the act, means a person who has a license in effect, issued by the Department specifying he is a master plumber; section 1E likewise declares that a "journeyman plumber" is one who holds a similarly issued license specifying he is a journeyman plumber; and section 1F declares that a "plumber's apprentice" is one, other than a master or journeyman plumber, who has in effect a plumber's apprentice certificate of registration issued by the Department.

Section 2A positively declares no person shall engage in the business of master plumber, or as an employer of a journeyman plumber or plumber's apprentice, or shall enter into contracts or agreements for the installation, maintenance or repair of plumbing or perform any of the acts specified in the law for performance by a master plumber unless that person has in effect a master plumber license issued to him by the Department. Section 2B bars a person from working as a journeyman plumber unless he is licensed by the Department; and section 2C will not allow a person to be employed as a plumber's apprentice or enter into and continue such occupation unless he possesses the required certificate of the Department. Section 2G forbids a person to hold at the same time a license as a master plumber and one as a journeyman plumber, and no licensed journeyman plumber shall perform any of the acts or projects specified in the law for performance by a master plumber.

Section 3A authorizes a licensed master plumber to be a plumbing contractor, and additionally, to engage in all, some, or either of the businesses of planning, engineering, superintending, installing, maintaining and repairing plumbing in all its branches. He is authorized to employ journeyman plumbers and plumbers' apprentices, and other persons necessary for the proper conduct of the business of plumbing. Section 3B allows a licensed journeyman plumber to engage in his calling only as an employee of a licensed master plumber, partnership, firm or corporation author-

ized to engage in plumbing by the provisions of the act. A journeyman plumber as such employee is allowed to install, maintain and repair plumbing in all of its branches only under the general supervision of a licensed master plumber. Section 3C allows a registered and certified plumber's apprentice to engage in the employment of learning the plumbing trade, but he may only engage and continue in the plumbing trade as an employee of a licensed master plumber, partnership, firm or corporation authorized to engage in the plumbing business. Such employment of learning the trade must be under the direct personal supervision of a licensed master plumber, or a licensed journeyman plumber who is in the employ of a licensed master plumber. The apprentice is specifically forbidden to engage in any activity pertaining to plumbing which the act has specifically reserved for master plumbers and journeyman plumbers.

Section 5A lists the duties imposed upon the Director in implementing the act. He appoints the members of the Board, and in doing so he must obey the mandate of section 4 which fixes the number of Board members at three. One must be a master plumber possessing a master plumber license which has been in effect for at least two years; one must be a journeyman plumber possessing a license for that trade which has been in effect for two years; the third member appointed is not required to meet any bill of specifications. The section furthermore directs that in the filling of the positions held by the master plumber and the journeyman plumber the Director, "* * * shall give due consideration to the recommendations of the Illinois Master Plumbers Association * * * and the Illinois Association of Journeyman Plumbers and Steamfitters * * *," as such recommendations are conveyed to him in writing by the respective secretaries of the associations. Section 5 also requires the Director to make avail of the aid and recommendations of the Board, (a) in preparing the forms

for application for examinations for journeyman plumber and master plumber. He is not required to call in such aid in the preparation of the license certificates, and certificates of registration for apprentices, (b) in prescribing the rules and regulations for the conduct of the examinations of applicants for licenses, and in preparing the subject matter of such examinations; (c) in prescribing the rules and regulations for hearings to revoke or reinstate licenses; (d) in prescribing the standards as to what shall constitute a recognized college or university, and in determining the conformance to such standards.

Section 4 creates the Board and subsections B and C of section 3 (inadvertently incorporated in section 3 instead of section 4 when the act was engrossed) specifies the duties imposed on the Board, and the pay of the members. Section 3B requires the Board to aid and co-operate with the Director when he is performing the duties imposed upon him by section 5. Further, the Board is to act as a committee for the purpose of making written reports and recommendations to the Director, and also to perform such other duties for the purpose of carrying out the provisions of the act as are from time to time prescribed by the Director.

Section 6 covers the subject of making application for the license of master plumber, journeyman plumber, and for certificate of registration of plumber's apprentice. Subsection A thereof makes the filing of an application for issuance of a master plumber license impossible unless, (1) it is accompanied by a $100 fee; (2) the applicant is a citizen of the United States; (3) is accompanied by the affidavits of applicant's employer or former employer (who must be licensed master plumbers,) or other satisfactory evidence showing the applicant has been actually engaged as a licensed journeyman plumber for at least five years; or has been graduated from a recognized college or university in either of the courses of plumbing, sanitary engi-

neering, mechanical engineering, civil engineering or architectural engineering, and has also been employed by a licensed master plumber for at least two years as a licensed journeyman plumber; or has been a student in a recognized college or university pursuing any of the above enumerated courses of study for at least three years, and has been thereafter employed as a licensed journeyman plumber by a master plumber for at least three years. In subsection B the conditions precedent in regard to filing an application for a journeyman plumber license and taking the examination therefor are generally similar to those just stated except for the size of the fee. The affidavit accompanying the application must establish the applicant has been "occupied" as a plumber's apprentice for at least five years, or has pursued any of the prior mentioned courses of study in a recognized college or university for three years and has also served two years as a registered plumber's apprentice. Subsection C requires as conditions precedent to the filing of an application for a certificate of registration as a plumber's apprentice and for being registered, that the applicant must be at least sixteen years old, and the application be accompanied by the affidavit of a licensed master plumber stating the applicant is to be immediately employed by affiant master plumber upon issuance of the certificate of registration.

Section 7A, insofar as is pertinent to the present inquiry, requires all the examinations to be conducted by the Department with the aid and co-operation of the Board. Section 7B orders the Director to allow or deny applications for master plumber and journeyman plumber licenses upon the recommendation of the Board respecting each applicant, the licenses being issued by and in the name of the Department. Sections 11, 12, 13, 14, 15 and 16 pertain to the revocation of licenses of master plumber and journeyman plumber, and the certificates of registration of plumber's apprentice. Grounds for revocation are stated

and provision is made for the initiation, conduct and termination of a proceeding for revocation. Section 12 requires the Board, acting under the supervision of the Department, to conduct a hearing on the charges specified in the complaint for revocation of a license or certificate of registration. Section 15 requires the Board, upon the conclusion of a hearing, to present to the Director a written report of its findings and recommendations. The Director shall then order the license or certificate of registration be revoked, or that the complaint be dismissed, in accordance with the recommendations of the Board. Rehearings are provided for, and the Board is the sole determiner whether a rehearing shall be granted. Section 17 provides a revoked license or certificate may be restored by the Department after there has been a hearing before the Board on the matter and it has recommended such be done. The Department cannot exercise any discretion but must comply with the recommendation of the Board.

Section 1 of article II of the State constitution declares all men have certain inherent and inalienable rights, three of them being the right to life, the right to liberty and the right to pursue happiness. Section 2 of the same article declares none of three named rights, plus the right of property, shall be taken from a person except by due process of law, *i.e.,* the law of the land. A person's business, profession, trade, occupation, labor, and the avails from each constitute "property" envisioned in the two sections. The right to follow any of those activities is "liberty" as also envisioned therein. Those rights guaranteed by the constitution are not unqualified rights to be exercised regardless of harm to others at all times or places. There must be a yielding, partially or wholly, thereof for the common good of society when the State so commands through the rightful use of its inherent police power to secure either the public health, morals, safety, comfort or common welfare.

That power is great and reaches far, but its use is hedged with restrictions. The fact the legislature has invoked the

police power for regulatory purposes directed against an activity such as a trade, etc., is not conclusive that the power was lawfully exercised. Whether it was lawfully used in a given instance is a judicial problem belonging exclusively to the courts. (*Banghart* v. *Walsh,* 339 Ill. 132.) The restraint imposed upon a legitimate activity by an exercise of the police power for regulatory purposes must be a reasonable one, be for the protection of the public health, morals, safety, comfort or common welfare, and also be reasonably adapted to attain the objective intended. (*McDougall* v. *Lueder,* 389 Ill. 141; *Scully* v. *Hallihan,* 365 Ill. 185; *People* v. *Weiner,* 271 Ill. 74.) Statutes enacted under that power must be construed, if possible, so as to avoid infringing any of those basic rights. (*Meadowmoor Dairies, Inc.* v. *Milk Wagon Drivers' Union,* 371 Ill. 377.) The legislature cannot enact a lawful statute by invoking the police power on the pretense of protecting public interests when the actual objective of the statute constitutes an arbitrary interference with private business, or imposes unusual and unnecessary restrictions upon lawful occupations; if such statute does not tend to preserve the public health, safety or welfare, it is void as an invasion of individual property rights. *People* v. *Carolene Products Co.* 345 Ill. 166.

Obstacles are interposed by the act to a person freely and of his own choice engaging in the occupation of master plumber, the trade of journeyman plumber, and the activity of learning the trade by apprenticeship. One cannot be a licensed master plumber unless he has prior thereto been a licensed journeyman plumber, and before that a certified registered plumber's apprentice. No matter how well qualified a person may be by instruction and training, he can never of his own free will and choice become a certified registered plumber's apprentice, a journeyman plumber or master plumber, unless a licensed master plumber so wills. The act does not load a licensed master plumber with the obligation of employing a person who desires to enter into

an apprenticeship. The refusal to employ one as an apprentice need not be based upon any valid reason. It may be an arbitrary refusal, it may be a refusal predicated upon an understanding between master plumbers to limit the number of apprentices learning the trade, and it may be upon one, or some, of the facts of race, color or creed. The act does not allow a person to learn the trade of journeyman plumber by acquiring the necessary instruction and training in any way, other than as an apprentice to a licensed master plumber. Just the refusal to employ will effectually bar the way to an apprenticeship. The licensed master plumber is in full and absolute control of the situation, a private citizen exercising a power under the protection of the State which the State cannot lawfully exercise, *i.e.,* the arbitrary denial to a citizen of his inherent and inalienable right to engage in a legitimate activity by his own free will and choice. After a plumber's apprentice has started to serve the five years required of him, he is still subject to the unregulated will of the licensed master plumber employer. Under the act his tenure as an apprentice may be terminated at any time by the employer, for it does not require apprenticeship articles to stabilize the relationship of the two.

When the apprentice attains the status of licensed journeyman plumber, he cannot ply his trade freely and in the manner of his choice. He is denied the right to work for himself. From this it appears the legislature was of the opinion that though a licensed journeyman plumber is qualified to follow his trade, as that trade is defined in the act, he is not qualified to judge the merits or demerits of his own work and, therefore, must always work under the general supervision of a licensed master plumber. The act cannot be circumvented by a licensed journeyman plumber following his trade independently under a licensed master plumber he hires to generally supervise his work. That would constitute a reversal of the roles of employer and

employee which the act does not countenance. Section 2D of the act permits a firm, association, or partnership to engage in the plumbing business just the same as a licensed master plumber is permitted to do, provided one "active" member of each group is a licensed master plumber who is "continually engaged in the conduct, supervision or performance" of the group business. Section 2E allows a corporation to do likewise, provided its work is supervised by a licensed master plumber, and a licensed master plumber (not necessarily the one who supervises the work) is an active corporate official of the corporation, actively and continually engaged in its plumbing business. Section 2F requires every licensed master plumber, firm, association, partnership and corporation engaged in the plumbing business, "with sites or places of business in different cities of this State, shall have at least one licensed Master Plumber * * * continually in charge and supervision" in each of those cities.

The above facts, as do other facts, establish that a licensed master plumber must always be at hand to exercise general supervision over the work of the licensed journeyman plumber. The possession of the exclusive and unregulated right bestowed by the act to either pass, or condemn, the work of the licensed journeyman plumber places the licensed master plumber in complete control of the latter in respect to his work, so long as he plys his trade within the geographical limits prescribed by the act.

The fact that the act permits those groups to engage in the defined business of plumbing constitutes an acknowledgment that the relationship of licensed master plumber employer and licensed journeyman plumber employee is not an indispensable condition precedent to the general supervision of the work of the journeyman by the master. The plaintiff in error states the relationship of employer and employee to be necessary in order that the general supervision may adequately protect the health, safety and

welfare of the public. The above fact stands as a legislative pronouncement against this position. Further evidence is found in the act that the requirement of the relationship of employer and employee is not necessary to secure the general supervision sufficient to give the above protection. The act declares a master plumber cannot hold a license as a master plumber and also hold a license as a journeyman plumber. In that is found the bar to a licensed master plumber plying his old trade. When a master plumber resumes his prior status of licensed journeyman plumber, he is better equipped to follow his trade than he was when originally licensed as such. However, the act requires him to become the employee of a licensed master plumber and have his work supervised by the latter. Such supervision under that circumstance is useless and only serves to emphasize the fact that the relationship of employer and employee between the licensed master and the licensed journeyman is not necessary to protect the health, safety and welfare of the public by supervisory control.

The journeyman plumber must pay a fee of $100 the first time he takes the examination to qualify for the license of master plumber. Should he be unfortunate and take the examination two more times, each effort will cost him a $25 fee. If he be very unfortunate and is examined for the fourth or more times, each of those efforts must be preceded by the payment of $100. The variety of fee requirements is proof that if the fee for the second and third examinations is a reasonable assessment towards meeting administrative costs incurred in the preparation and giving of the examinations, then the fee for the first, fourth, and subsequent examinations has been determined without regard to reasonable administrative costs. A survey of the professions, trades, and occupations, over which the State exercises control through the Department of Registration and Education, discloses that fees are charged, as a condition precedent to being examined by the Department, which

range from a high of $25 to a low of $5. None of the fee schedules inspected embody the idea of variability of fee size as does the act before us. In some instances, a second examination is allowed for no additional fee, or for a fee which is much smaller than the initial one. Many of the activities are controlled because of their direct and close relationship to public health, safety, and welfare. From their nature it is very clear much more time and effort must be spent in the preparation of and conducting examinations, than would be the case in examining journeyman plumbers. The unusual schedule of fees for examinations to be licensed as master plumbers does not have any reasonable relation to the preservation of public health, safety, and welfare, and it does not reasonably tend to promote such.

The right to instruct the apprentices and journeyman plumbers belongs exclusively to the master plumbers. Educational institutions, public or private, are barred by the act; and it cannot be circumvented by employing a licensed master plumber and his licensed journeyman plumber employees. The students instructed must be *bona fide* apprentice employees of the licensed master plumber who is hired. The legislature by bestowing that right upon licensed master plumbers, intentionally or unintentionally, conferred upon them a monopoly. If the grant was intentional we must believe, in the absence of proof to the contrary, the legislature was of the opinion such types of instruction did not properly fall within the scope of, or were beyond the abilities of, educational institutions. That opinion must rest upon the presumption that the business of master plumber, the trade of journeyman plumber, and the occupation of plumbing generally, as each is defined in the act, possess unusual and exceptional characteristics which are inherent, and render it impossible for an educational institution to instruct, or adequately instruct, in either. In the light of our common knowledge that the field of instruction covered in public and private educational institutions embraces an

almost infinite variety of subjects, ranging from the very simple to the very complex, we know such belief to be erroneous.

This presumption may have been the reason why ten years of service (eight years, by offset credit for schooling in institutions and courses approved by the Director) is required prior to becoming a licensed master plumber, and five years' service (either three or two years, by like offset credit) before becoming a licensed journeyman plumber. Defendant contends such periods of service place an unreasonable restraint upon a person desiring to exercise his inherent right to engage in any legitimate calling he chooses, and such restraint has no reasonable relation to the preservation of public health, safety and welfare. Some, if not all, of the courses enumerated in the act, require pre-engineering courses in college before taking the engineering course selected. This would mean four to seven years of institutional instruction. A graduate, in a listed course from a university recognized by the Director, who desires to pursue the calling of master plumber can only do so when licensed under this act. That graduate, despite his thorough schooling, would have to serve a minimum of two years as an apprentice, employed by a licensed master plumber, to do the work which the act declares to be within the competency of a sixteen-year-old graduate, or nongraduate, of a high school. This graduate must pass the examination for journeyman plumber and serve a minimum of two years in that trade as an employee of a licensed master plumber. He would have to spend from eight to eleven years before reaching his goal.

The above is the extreme illustration in one direction; the opposite is where the ambitious person starts at age sixteen without educational credits to offset a portion of the prescribed time of service. It is argued that this statutory requirement is susceptible to the same constitutional objection. In *Douglas* v. *People ex rel. Ruddy,* 225 Ill.

536, this court upheld the constitutionality of the Plumbing License Act of 1897, and in dealing with the question of the power of the legislature to regulate the business of plumbing and the licensing of plumbers, had occasion to approve a statement of the Supreme Court of Ohio. (*State v. Gardner*, 58 Ohio St. 599, 51 N.E. 136.) That court said the business of plumber is not ranked with the learned professions, for much of his work is mechanical, calling only for a deftness of the hands rather than the possession of scientific knowledge; although a certain amount of training and experience is absolutely necessary in order to make one know the groundwork of his calling and be competent in its exercise. Pharmacy and the practice of medicine are very intimately related to public health, safety and welfare, and for that reason are more stringently regulated through the police power than most other activities affecting the public. The knowledge of the subject, and the training required in those professions in order to equip a person to function in each field, is far more voluminous and complex than the knowledge and the training required in the subject of plumbing in order to qualify one to follow the occupation of master plumber or the trade of journeyman plumber.

Those comparisons, and others of similar nature we have made, clearly evidence the fact that the minimum length of time to be served for receiving instruction in the trade of journeyman plumber and in the business of master plumber is not in accord with the actual realities of each calling. In addition to the fatal fault arising from the requirements pertaining to the length of service by an apprentice and a journeyman, there are other objectionable features in relation to those requirements, *viz.:* (1) monopolistic right to instruct given to the master; (2) the persons instructed must be employees of the instructing master; (3) the fact the act does not impose controls whatever on the instructing master whereby the instructed

employee will be sure of receiving complete and thorough instruction, (this has a special aspect in connection with the fact no regulations are imposed by the act applicable to the examinations which follow the instruction;) (4) the minimum limitations evidence that no consideration was given by the framers of the act to the fact that the abilities of apprentices and journeymen to assimilate instruction varies, as it does among other persons, and that one becoming qualified for examination prior to the expiration of his period of servitude cannot be examined until he has served his time, thus furnishing no incentive for acceleration of instruction, and minimizing the turnover of employees receiving instruction; and (5) the license to be ultimately obtained will grant the right to engage in either the business of master plumber, or in the trade of journeyman plumber, anywhere in the State. The license to be granted in Chicago under the provisions of section 9 of the act, (Ill. Rev. Stat. 1949, chap. 111½, par. 103,) to engage in similar activity will also be good over the entire State. This will be true even though the times to be served and the instruction may differ materially in many vital respects, even to the extent of establishing two totally irreconcilable standards of instruction to qualify persons to perform the same work, and to examine them in order to determine if they have acquired those qualifications.

The defendant believes section 7 to be invalid because it confers upon the Board the exclusive and unrestricted right to recommend whether examined applicants should be issued licenses by the Department. Section 7 is necessarily coupled to section 5, because the legislature did not prescribe any rules or standards for conducting the examination for master plumber and journeyman plumber, and, even worse, it did not enjoin uniformity in the examinations in each category. To counter this the People point to section 1, wherein "plumbing" is exactly defined, and to section 2, defining the three grades of persons engaged in

plumbing, and prescribing what part of the field of plumbing each may engage in. They say this court will not indulge in the presumption that the Director, the Board, and the Department will act arbitrarily by disregarding those definitions when drafting and giving the examinations, or otherwise deviate from the "sound meaning and expressed intent of the act."

When the legislature cannot understandingly or advantageously perform acts, it may delegate to others the power to do so, but it cannot delegate its inherent function to declare the law. (*Toplis and Harding, Inc.* v. *Murphy,* 384 Ill. 463.) Should a statute clothe an administrative officer with the discretion as to the administration of the statute and also clothe him with the right to determine what the law is, or give to him the opportunity to apply it to one and not apply it to another in like circumstances, either would constitute an unlawful delegation of legislative power. (*City of Rockford* v. *Hey,* 366 Ill. 526.) The repealed act of 1897, often pointed to by the People as having been declared constitutionally sound in *Douglas* v. *People,* 225 Ill. 536, has no bearing on this point. That act did require examinations to be held, which would explore the applicant's "practical knowledge of plumbing, house drainage and plumbing ventilation." The same rule was in the act of 1917.

The presumption mentioned cannot override an express mandate of constitutional law forbidding wrongful delegation of legislative power to declare the law. Section 5A4 of the act simply declares the Director, with the aid and co-operation of the Board, shall draft the rules and regulations for the conduct of examinations. We do not question that delegation of power, but we do question the following delegation of the power, "to prepare the subject matter of such examinations." For some undisclosed reason, the legislature did not see fit to prescribe rules or standards, in respect to what subjects generally the exam-

inations should cover. The licenses to be issued under the acts of 1897 and 1917 allowed one, either as a master plumber, or as a journeyman plumber, to engage in the "business of plumbing," and that term was undefined in either act. Neither act defined the two vocations in the field of plumbing. In each act the legislature plainly specified the rule or standard by which the subject matter and the thoroughness of the examination had to be determined. (There, evidently the same examination was given for both vocations.) Here, the Director and the Board, under the power delegated, are not required to examine applicants on the subject of plumbing as it is defined in the act, or as it may be commonly understood to be aside from the act. A given group of applicants up for examination at the same time, and being either applicants for a master plumber's or for a journeyman plumber's license, can have no assurance the examination will be uniform for all the group. The fact the Department with the aid and co-operation of the Board conducts the examinations, and that the Director shall allow or deny licenses upon the recommendation of the Board after it has graded the examination papers, when examined against the background of the statutory statement that master plumbers and journeyman plumbers are such persons because licensed as such by the Department, only serves to emphasize the potentialities for wrongs on the general public which exist in such delegation of powers *sans* any control. Comparisons of the acts of 1897 and 1917 with the act before us demonstrate the presence of many more reasons for the inclusion in the latter of some rule or standard in respect to the subject matter of examinations, and to compel uniformity of examinations applicable to all of the group being examined at the same time to test their qualifications for a specific type of license. The defendant is right in his contention that the delegation of power constitutes the conference of an unrestricted right on an administrative officer to declare

what the law is, contrary to article III of the State constitution. Any recommendation made by the Board under section 7 will be void, for it would rest upon the Director's unrestricted right, with the aid and co-operation of the Board, to cast the examination both as to kind and context in any form his judgment determines.

The legislature conferred a special privilege upon licensed master plumbers, as a class, when it gave to them the arbitrary and exclusive right to determine who shall, or shall not, engage in the vocation of learning the trade of journeyman plumber, coupled with their having the sole right, with the uncontrolled exercise thereof, to instruct plumbers' apprentices in that trade. Defendant argues it is a special privilege contrary to section 22, article IV, of the constitution. The People counter by saying each applicant has an equal opportunity to take the required examination, provided he possesses the qualifications demanded by the act. The People ignore the fact one cannot become an applicant to take the examination for journeyman plumber until he has been employed by a master plumber. Applicants must come from the ranks of apprentices, and apprentices come into existence only through the reasoned, or unreasoned, grace of the licensed master plumber. The People also say the special privilege is not unlawful, for anyone aggrieved by the arbitrary or discriminatory acts of officials charged with the administration of that law can appeal to the courts for redress of any wrong. That idea detours around the fact that the licensed master plumber, in so far as the charge of unlawful special privilege is concerned, is not a public official charged with the administration of any part of the act. Those public officials do not have any control over the licensed master plumbers with respect to whom may become an apprentice, or over the instruction of the apprentice, aside from demanding the mandatory five years of servitude as an apprentice, or less service, depending upon the character of earned educational

credits as a condition precedent to taking examinations. No court can compel a licensed master plumber to employ a person so he may become an apprentice under the act.

A class cannot be created through the medium of an arbitrary statutory declaration by the legislature in order that it may be the recipient of special and exclusive legislative favors. To render the classification a valid one in such instances, it must rest on material distinctions in the situation and in the circumstances of individuals who are to be recipients of the favors. Those grounds of distinction and classification must be related in reason and principle to the privileges granted to individuals, as a class, by the legislature. (*Marallis* v. *City of Chicago*, 349 Ill. 422; *People ex rel. Akin* v. *Board of Supervisors*, 185 Ill. 288.) The legislature, by the act under consideration, has interfered with the inherent right of citizens freely and of their own choice to engage in the legitimate vocation of learning the trade of journeyman plumber. The inherent police power of the State was used to bring about that interference, and such interference must be related to the health, safety or general welfare of the public. To negative this charge of the defendant this court must be shown that the conferring of that special privilege is based upon material distinctions which set the vocation of learning the trade of journeyman plumber apart from the vocation of learning some other trade which has a direct, but reasonable, relation to the public health, safety or welfare. We must also be shown that the circumstances which surround licensed master plumbers in the conduct of the business of plumbing in all of its branches, as defined in the act, requires the granting of the monopolistic special privilege as a matter of necessity, reasonably related, and tending by reasonable means, to promote the public health, safety or welfare.

From what we have said elsewhere in this opinion, it is very clear it has not been demonstrated that the bestowal

of the special privilege rests upon material distinctions between the trade of plumbing and other trades or vocations affecting the public health, safety or welfare; or that licensed master plumbers, as a class, are so circumstanced by the innate characteristics of their calling that the special privilege in their hands is necessary and will beneficially affect the public as stated above. The special privilege was granted in violation of the constitution.

The county court of Massac County did not err in holding sections 2, 5 and 7 of the act void for being in contravention of sections 1 and 2 of article II, article III, and section 22 of article IV, of our State constitution, and also of the fourteenth amendment to the Federal constitution.

The judgment of the county court is affirmed.

*Judgment affirmed.*