(No. 32818.—

FRED E. SCHROEDER *et al.,* Appellees, *vs.* VERA M. BINKS, Director of Registration and Education, *et al.,* Appellants.

*Opinion filed June 17, 1953.*

LATHAM CASTLE, Attorney General, of Springfield, (JOHN L. DAVIDSON, JR., MARK O. ROBERTS, LEE W. ENSEL, and NORMAN P. JONES, of counsel,) for appellants.

VAIL, MILLS & ARMSTRONG, of Decatur, and GILLESPIE, BURKE & GILLESPIE, of Springfield, (ROBERT P. VAIL, THOMAS H. ARMSTRONG and HUGH J. DOBBS, of counsel,) for appellees.

JOHNSTON, THOMPSON, RAYMOND & MAYER, JAMES A. SPROWL, and WESLEY G. HALL, all of Chicago, for the Chicago Journeyman Plumbers Union, *amicus curiae*.

CASSIDY, SLOAN & CASSIDY, of Peoria, for Illinois Master Plumbers Association, *amicus curiae*.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

This case involves the validity of the Illinois Plumbing License Law of 1951. (Ill. Rev. Stat. 1951, chap. 111½, par. 116.1-116.35.) Alleging the invalidity of the act, the plaintiffs, who are citizens and taxpayers engaged in the business of selling hardware, heating and plumbing equipment at retail, commenced this action in the circuit court of Sangamon County, seeking to enjoin the expenditure of public funds in its administration. (Ill. Rev. Stat. 1951, chap. 102, pars. 11-16.) The defendants, who are State officers charged with the enforcement of the act, answered. After hearing evidence, the circuit court entered a decree finding the statute unconstitutional and enjoining its enforcement. The defendants have appealed directly to this court.

In *People* v. *Brown*, 407 Ill. 565, the Illinois Plumbing Law of 1935 was held unconstitutional. The act which is now before us was then adopted. The basic contention of

the plaintiffs is that the present statute has failed to cure many of the defects which invalidated its predecessor. The defendants maintain that the new statute has eliminated the infirmities in the earlier act which were pointed out in the *Brown case.* In this case, as in the *Brown case,* the general power of the State to regulate plumbing and plumbers for the protection of the public health is not disputed. As in that case, the issue here is whether in the exercise of a power acknowledged to exist, constitutional limitations have been transgressed.

In broad outline the Illinois Plumbing License Law of 1951 defines "plumbing," prohibits any person from engaging in plumbing without a license, prescribes the conditions upon which licenses may be issued, and commits the administration of the act to the Department of Registration and Education. All installation, repair and maintenance of plumbing (except minor repairs on a person's home premises) is required to be performed by or under the supervision of a licensed master plumber. (Ill. Rev. Stat. 1951, chap. 111½, par. 116.4.) The act provides for licensed master plumbers, licensed journeymen plumbers and for plumber's apprentices. Except for "grandfather" and reciprocity provisions, the licenses are to be issued upon examination. Eligibility to take the examinations depends upon a showing of compliance with stated prerequisites. Any person over sixteen years old may work as a plumber's apprentice, but he must work under the supervision of a master or journeyman. (Ill. Rev. Stat. 1951, chap. 111½, par. 116.4.) An applicant for the master's examination must show that he has been the holder of a journeyman's license in this State for one year, or that he has worked as a plumber in another State or in the military service for five years, or that he has a college degree in specified courses and one year of practical experience in plumbing. (Ill. Rev. Stat. 1951, chap. 111½, par. 116.12.) An applicant for the journeyman's examination must show that he

has worked as an apprentice for five years, or that he has worked as a plumber in another State for two years or in military service for three years, or that he has taken specified courses in college or trade school for two years and has had one year of practical experience in plumbing. Ill. Rev. Stat. 1951, chap. 111½, par. 116.13.

Plaintiffs have attacked the validity of the act upon many grounds. In the view we take of the case, however, it is necessary only to determine whether or not the basic objections to the 1935 act which were pointed out in *People v. Brown*, 407 Ill. 565, have been eliminated. The 1935 act was invalid because it imposed upon the plumbing business a rigid economic pattern, with fixed categories of employers and employees which were unrelated to considerations of public health, and because it gave the class of master plumbers an arbitrary control over access to the plumbing business. That act required that journeymen and apprentice plumbers be employees of master plumbers. The present act eliminates the requirement of employment by master plumbers, and substitutes for it a requirement of supervision by master plumbers of all plumbing work done by journeymen or apprentices. It is argued on the one hand that this change has effected a complete cure, and on the other that the change is a euphemism which has left unaltered the underlying vice of the former statute.

Concerning this aspect of the 1935 act this court said in *People* v. *Brown*, 407 Ill. at pp. 574-5: "When the apprentice attains the status of licensed journeyman plumber, he cannot ply his trade freely and in the manner of his choice. He is denied the right to work for himself. From this it appears the legislature was of the opinion that though a licensed journeyman plumber is qualified to follow his trade, as that trade is defined in the act, he is not qualified to judge the merits or demerits of his own work and, therefore, must always work under the general supervision of a licensed master plumber. The act cannot be circum-

vented by a licensed journeyman plumber following his trade independently under a licensed master plumber he hires to generally supervise his work. That would constitute a reversal of the roles of employer and employee which the act does not countenance. * * * The above facts, as do other facts, establish that a licensed master plumber must always be at hand to exercise general supervision over the work of the licensed journeyman plumber. The possession of the exclusive and unregulated right bestowed by the act to either pass, or condemn, the work of the licensed journeyman plumber places the licensed master plumber in complete control of the latter in respect to his work, so long as he plys his trade within the geographical limits prescribed by the act."

In our opinion, the pertinence of these observations has not been altered by the substitution of the present requirement of "supervision" by a master plumber for the former requirement of "employment" by a master plumber. Realistically viewed, the economic effect is the same. No duty to supervise is imposed upon the master plumber. He may supervise, or he may not, as he sees fit. And the possibility that his unregulated supervision will be available to a competing journeyman upon economically feasible terms is too remote to be acceptable. The net effect of the act is that the journeyman's status as an employee and the master plumber's status as an employer, remain as firmly fixed as they were in the *Brown case*.

Common knowledge and experience suggest no connecting link between considerations of public health and the requirement of the act that all plumbing work—of whatever kind or degree of complexity—which is done by a licensed journeyman plumber must be done under the supervision of a master plumber. Nor does the record supply the deficiency.

Harold E. Babbitt, professor of sanitary engineering at the University of Illinois since 1913, testified that mechani-

cally and manually there is no difference in the requisite skill of the master and journeyman plumber; that in the trade and in his experience the prime difference between journeymen and master plumbers is that the master plumber is the boss man who risks his capital and the journeyman is the employee. Harry B. Greisbach, a public school teacher at the Washburne Trade School in Chicago, testified that the term "journeyman plumber" referred to a plumber employed by a "master plumber." Phillip A. Mahoney, a licensed journeyman plumber, testified that he was employed by W. T. Mahoney & Sons, a corporation engaged in the plumbing business; that his brother, George, was the only master plumber in the firm; that he, Phillip, was engaged in the capacity of superintendent of plumbing installation of all work on the firm's contracts; that he had forty journeymen under his supervision; that it was his duty to select the men for jobs and to see that all plans, specifications, and ordinances were complied with; that to some extent he had designed and planned plumbing layouts "under the coordination" of his brother. Ray Smythe, who is engaged in the plumbing business in Missouri and operated a plumbing school in that State and wrote the Kansas City Plumbing Code in 1924 as well as the revision in 1947 and assisted in writing the Denver and Colorado Codes, testified that there is no real distinction between a journeyman and a master plumber, except that the master plumber is in the business of selling material and plumbing contracts and collecting money on these sales, and that if he is successful in collecting his money from job to job, he is called a successful master plumber, but otherwise there is no difference between the two.

In all of this there is no suggestion that protection of the public health is enhanced by the requirement that all of the work of a licensed journeyman must be supervised by a master. Rather it appears that the roots of the requirement reach back to an economic pattern which is anachron-

istic today. We do not, of course, hold that economic relationships are *per se* beyond the regulatory powers of the General Assembly. (See, e.g., *Oak Woods Cemetery Association* v. *Murphy*, 383 Ill. 301.) The statute now before us, however, in its preamble explicitly recites its concern for public health, and that alone. (Ill. Rev. Stat. 1951, chap. 111½, par. 116.1.) The rigid hierarchy it imposes upon the plumbing business appears to be an incidental, or accidental, appendage to regulations aimed primarily at protection of the public health. It has not been argued that there are economic maladjustments in the plumbing business which require or justify this feature of the act. No such considerations occur to us, and the record indicates none. We hold, therefore, that the circuit court was correct in determining that the act violated section 2 of article II and section 22 of article IV of the constitution of Illinois, and the due process and equal protection clauses of the Federal constitution.

*People* v. *Brown* did not deal only with the artificial categories of employer and employee which the 1935 act imposed. It also held that statute invalid because of the monopolistic control over the avenues of entry into the plumbing business which it placed in the master plumbers. "Obstacles are interposed by the act to a person freely and of his own choice engaging in the occupation of master plumber, the trade of journeyman plumber, and the activity of learning the trade by apprenticeship. One cannot be a licensed master plumber unless he has prior thereto been a licensed journeyman plumber, and before that a certified registered plumber's apprentice. No matter how well qualified a person may be by instruction and training, he can never of his own free will and choice become a certified registered plumber's apprentice, a journeyman plumber or master plumber, unless a licensed master plumber so wills. The act does not load a licensed master plumber with the obligation of employing a person who desires to enter into

an apprenticeship. The refusal to employ one as an apprentice need not be based upon any valid reason. It may be an arbitrary refusal, it may be a refusal predicated upon an understanding between master plumbers to limit the number of apprentices learning the trade, and it may be upon one, or some, of the facts of race, color or creed. The act does not allow a person to learn the trade of journeyman plumber by acquiring the necessary instruction and training in any way, other than as an apprentice to a licensed master plumber. Just the refusal to employ will effectually bar the way to an apprenticeship. The licensed master plumber is in full and absolute control of the situation, a private citizen exercising a power under the protection of the State which the State cannot lawfully exercise, *i.e.,* the arbitrary denial to a citizen of his inherent and inalienable right to engage in a legitimate activity by his own free will and choice. After a plumber's apprentice has started to serve the five years required of him, he is still subject to the unregulated will of the licensed master plumber employer. Under the act his tenure as an apprentice may be terminated at any time by the employer, for it does not require apprenticeship articles to stabilize the relationship of the two." *People* v. *Brown, 407* Ill. at 573-4.

The barriers to access to the examinations for license as journeyman and as master have been substantially lowered in the 1951 act now before us. Alternative qualifications have been established to determine eligibility for the examinations. The control of the master plumber over access to the occupation still continues, however, to a degree which, in our opinion, renders the act vulnerable upon the grounds pointed out in the *Brown case.*

One who has held a journeyman's license in this State for one year is eligible to take the examination for a license as a master plumber. (Ill. Rev. Stat. 1951, chap. 111½, par. 116.12.) The parties disagree as to whether this requirement is to be interpreted as satisfied merely by the

lapse of a calendar year or whether the requirement contemplates a year of practical experience in plumbing. If the former, the requirement has no significance in terms of the public health; if the latter, the experience involved can be secured, as a practical matter, only under the supervision of a master plumber. One who holds a college degree in prescribed engineering courses may take the master plumber's examination only if, in addition, he has a year of practical experience under the supervision of a master plumber. In the case of the applicant for a license as a journeyman plumber, practical experience under the supervision of a master plumber is required whether the applicant qualifies by an apprenticeship or by the successful pursuit of prescribed studies. Ill. Rev. Stat. 1951, chap. 111½, par. 116.13.

In the light of "common knowledge," this court in the *Brown case* rejected the underlying assumption that "the business of master plumber, the trade of journeyman plumber, and the occupation of plumbing generally, as each is defined in the act, possess unusual and exceptional characteristics which are inherent, and render it impossible for an educational institution to instruct, or adequately instruct, in either." (*People* v. *Brown,* 407 Ill. at 577.) Upon this ground the provisions of the 1935 act which required five years' practical experience as a journeyman as a condition to the right to take the examination for a master plumber's license, and five years practical experience as an apprentice as a prerequisite for the examination for a journeyman's license were held to be "not in accord with the actual realities of each calling." The record in this case does not suggest a contrary result.

Aside from those exceptional instances where applicants have engaged in the plumbing business in other States or in military service, the ultimate control of the situation remains in the hands of the private group of master plumbers. As we see it, it is no answer to say that credit

will be given for formal training or education in a trade school, university, or college when that instruction must be augmented by experience in the trade, under the supervision of a licensed master plumber. The master plumber is under no duty to supervise. Nor is there any indication as to the intensity or diversity of the required experience. The master supervises, if at all, upon his own terms, and to the extent that he sees fit. There is nothing in the record before us to indicate that the manual skills at which the experience requirements appear to be aimed cannot be obtained by methods other than the supervised experience which the act requires. Cf. *People* v. *Ringe*, 197 N.Y. 143, 90 N.E. 451; *Smith* v. *Texas*, 233 U.S. 630.

We are aware that there are decisions which, at least inferentially, imply judicial approval of regulations of the plumbing business which are similar to those here involved. (See: *People ex rel. Stepski* v. *Harford*, 286 N.Y. 477, 36 N.E. 2d 670; *Rountree Corporation* v. *City of Richmond*, 188 Va. 701, 51 S.E. 2d 256.) After careful analysis, however, similar legislation has been denounced by other courts as having no relation to the public health. (*City of Sioux Falls* v. *Kadinger*, 50 N.W. 2d 797 (S.D. 1951;) *Hench* v. *Michigan State Plumbing Board*, 289 Mich. 108, 286 N.W. 176; compare *Benedetto* v. *Kern*, 167 Misc. 831, 4 N.Y.S. 2d 844, with *People* v. *Harrison*, 170 App. Div. 802, 156 N.Y.S. 679, and *People* v. *Ringe*, 197 N.Y. 143, 90 N.E. 451.) We conclude that there is no persuasive authority which supports the economic hierarchy sanctioned by the Plumbing License Law of 1951 and that the act is not a proper exercise of the police power of the State.

There is no need to take up the objections directed against section 19, which the circuit court held invalid, or the many other constitutional points raised by plaintiffs. The provisions which have been discussed pervade the entire legislative scheme. Without them, the act becomes something far removed from the regulation contemplated

by the legislature. Where provisions held invalid are the essence of an act, the entire act must fall. (*People ex rel. Greening* v. *Bartholf*, 388 Ill. 445; *Winter* v. *Barrett*, 352 Ill. 441.) It follows that the entire Plumbing License Law, with the exception of section 20 which declares a legislative policy in favor of the municipal regulation of plumbing and authorizes municipal regulation, is unconstitutional.

The decree of the circuit court of Sangamon County is affirmed.

*Decree affirmed.*